UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE EDWARDS,

                           Plaintiff,

             - against -

THOMSON REUTERS (TAX & ACCOUNTING) INC.,

                         Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: May 5, 2020

**OPINION AND ORDER**

19 Civ. 93 (ER)

Ramos, D.J.:

      Michelle Edwards ("Edwards") brings this action against Thomson Reuters Inc. ("Defendant"), asserting gender and racial discrimination claims under the Equal Pay Act ("EPA") and 42 U.S.C. § 1981 ("§ 1981"), as well as a § 1981 retaliation claim. Before the Court is Defendant's motion to dismiss the discrimination claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons discussed below, the motion is GRANTED, and Edwards' request for leave to amend is DENIED.

**I.  BACKGROUND[2]**

      Edwards is an African American woman. *Id* ¶¶ 7, 8. From February 2011 to January 2018, she was employed by Defendant's Tax & Accounting Department at Hoboken, New Jersey. *Id*. ¶ 6. In November 2016, she took on an additional role of coordinating and managing a "lead-generation team," but allegedly did not receive compensation commensurate to her male counterparts working in Thomson Reuters' Carrollton, Texas office. *Id*. ¶ 14. According to

---

[1] Defendant does not move to dismiss Edwards' § 1981 retaliation claim.

[2] The following facts are drawn from the second amended complaint. Doc. 20.

Edwards, her job responsibilities with respect to "lead-generation managing" were exactly the same as her male counterparts in Carrollton, which included, among other things, "supporting subordinate employees, providing status reports to management about potential leads … and ensuring … customer satisfaction."  *Id.* ¶ 15.  Despite qualifying for a promotion, Defendant allegedly failed to timely promote Edwards.  *Id.* ¶ 19.  When she was eventually promoted to senior manager in 2017, her compensation was lower than that of "at least one Caucasian male." *Id.* ¶ 20.  Furthermore, Edwards' incentive bonus remained at ten percent, as opposed to fifteen percent for other non-African American and male senior managers.  *Id.* ¶ 16.

Upon receiving her new compensation package in March 2017, Edwards complained to her Human Resources liaison Renee Kaspar ("Kaspar") that she was being paid less than her "similarly situated Caucasian male coworker."  *Id.* ¶¶ 21, 22.  In July 2017, Edwards complained to Kaspar again, who allegedly stated, in pertinent part, that "[w]omen and minorities are not being paid what they should…Mileva [Caucasian female] has been petitioning for a raise, but I can't even consider it because S.Webly, an African American female, is making such a smaller salary."  *Id.* ¶ 24.  Kaspar recommended that Edwards talk to her supervisor.  *Id.* ¶ 25.  Edwards approached her supervisor in September 2017, who allegedly acknowledged pay discrepancies and told her "give me a month to see what I can do."  *Id.* ¶ 28.  According to Edwards, her supervisor later confronted Kaspar about giving Edwards confidential salary and compensation information.  *Id.* ¶¶ 29, 30.  Her supervisor also allegedly told Edwards to "keep your distance from [Kaspar]."  *Id.* ¶ 32.  Ultimately, Kaspar, with whom Edwards had been in frequent contact, was fired in November 2017, allegedly because of her advocacy for Edwards.  *Id.* ¶ 33.

In December 2017, Edwards informed her supervisor that she was leaving to work for another company.[3] *Id.* ¶ 34. At her supervisor's request, Edwards continued working for Defendant for another four weeks, during which she helped "S. Teitlebaum," ("Teitlebaum"), a Caucasian female, transition into taking over her position. *Id.* ¶ 35. Teitlebaum allegedly joined as a senior manager and received thirty percent more in total compensation than Edwards, despite the fact that Teitlebaum was junior, had never had direct reports, had never managed a team, and had no business experience for the position. *Id.* ¶ 36. After Edwards left in January 2018, Defendant allegedly implemented a bonus structure under which she was no longer eligible for her bonus, effectively reducing her compensation. *Id.* ¶ 37.

According to Edwards, from 2015 to January 2018, she received substantially less base compensation and bonus than "at least one similarly situated Caucasian male co-worker in her department," whom she identified as D. Fermander ("Fermander"). *Id.* ¶¶ 12, 13. Also, in her performance evaluations, she allegedly received "far exceeds," the highest mark possible throughout her employment, and never received a disciplinary action. *Id.* ¶¶ 17, 18.

On January 4, 2019, Edwards commenced the instant action. Doc. 1. On February 14, 2019, she filed an amended complaint as of right. Doc. 3. On May 31, 2019, Defendant filed a motion for more definite statement.[4] Doc. 15. At a pre-motion conference on June 12, 2019, the Court granted Edwards leave to file a second amended complaint,[5] which she did on June 19,

---

[3] In her complaint, Edwards does not say why she was leaving Thomson Reuters.

[4] Defendant's motion provided a comprehensive list of specifically identified deficiencies in Edwards' first amended complaint including, *inter alia*, her failure to plead how her job and the higher paying position required "substantially equal skill, effort and responsibility than that of unnamed comparators," and the manner in which she was targeted on the basis of her race. *See* Doc. 15 at 2. Additionally, they provided helpful case law concerning Edwards' claims. *See generally id*.

[5] In granting leave to amend, the Court specifically noted to Edwards at the pre-motion conference that the amended complaint was fairly thin as read, and that additional details about Edwards' job responsibilities, and about the individuals she compares herself with would be helpful. *See* Tr., Doc. 21 at 4:5-6, 4:22-5:1.

3

2019. Doc. 20. In the second amended complaint, Edwards asserts an EPA discrimination claim, a § 1981 discrimination claim, and a § 1981 retaliation claim. *See generally id.* On September 17, 2019, Defendant moved to dismiss the EPA and § 1981 discrimination claims for failure to state a claim pursuant to Rule 12(b)(6). Doc. 30.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal

quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . .").

### III. DISCUSSION

Defendant contends that Edwards fails to state a discrimination claim under either the EPA or § 1981. Specifically, defendant argues: (1) that she fails to sufficiently allege that she performed substantially equal work as her male counterpart under similar working conditions for her EPA claim; and (2) that she fails to allege sufficient facts giving rise to an inference of discriminatory motivation for her § 1981 claim. The Court addresses each argument in turn.

#### A. The EPA Discrimination Claim

The EPA, passed by Congress in 1963, prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Therefore, to state a *prima facie* case under the EPA, a plaintiff must allege that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *See EEOC v. Port Auth. Of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (internal citation and quotation marks omitted). "Emphatically," the EPA concerns equal pay for equal work. *See id*. Although a discrimination complaint need not allege facts "establishing each element of a *prima facie* case of discrimination" at the pleading stage, it must

contain "sufficient factual matter," from which a reasonable inference can be drawn that the relevant employees' job content was "substantially equal."  *See id*. at 254, 256.  Under the EPA, a viable claim "depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination," are insufficient.  *Id*.  Here, the Court finds that Edwards fails to sufficiently allege that she was paid less for "substantially equal" work.

First, Edwards alleges that she received "substantially less" base compensation and bonus than one similarly situated Caucasian male co-worker named Fermander.  *See* Second Am. Compl. ¶¶ 12-13.  It is axiomatic that bald and formulaic recitation of the elements of an EPA claim cannot suffice to overcome a motion to dismiss.  *See Twombly*, 550 U.S. at 555 (deeming a "formulaic recitation of the elements of a cause of action" insufficient to survive a motion to dismiss).  Even assuming arguendo that these assertions sufficiently plead that Edwards and Fermander received different wages, they speak nothing of Fermander's actual job content, such as the position he held, or the necessary "skill, effort, and responsibility" required to perform his job.  As such, Edwards fails to set forth any facts showing how Edwards was "similarly situated" to her male comparator.  *See Werst v. Sarar USA Inc.*, No. 17 Civ. 2181 (VSB), 2018 WL 1399343, at *8 (S.D.N.Y. Mar. 16, 2018) (finding allegations that "similarly situated male employees earned a higher salary" with their "names and work locations" insufficient).

Next, Edwards alleges that her "job responsibilities with respect to lead-generation managing were exactly the same as her counterparts in Carrollton, Texas," and sets forth some of the job responsibilities.  *See* Second Am. Compl. ¶¶ 14-15.  While these allegations arguably provide some additional content, they too fall short of the requisite showing supporting a reasonable inference of substantially equal work.  At best, they suggest that some overlap exists

between Edwards' job duties and her counterparts in Carrollton. There are no factual allegations, however, that Edwards and her counterparts in Carrollton performed their jobs under similar working conditions, or that their jobs require comparable effort and skill level. *See* 29 C.F.R. § 1620.14(a) (explaining that the requirements of substantially equal skill, effort, and responsibility are separate tests, each of which must be met); *see also Port Auth. Of N.Y. & N.J.*, 768 F.3d at 255 (explaining the EEOC's regulations defining "the statutory criteria underlying the equal work inquiry"). Accordingly, Edwards fails to adequately allege that she and her comparators performed equal work on jobs requiring equal skill, effort, and responsibility; and the jobs are performed under similar working conditions. *See id*. at 254-55 (internal citation and quotation marks omitted).

Lastly, in her second amended complaint, Edwards only asserted violations of the EPA[6] and § 1981. In her opposition papers, however, she attempts to assert a retaliation claim under the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). It is well settled that a plaintiff cannot amend her complaint in response to a motion to dismiss. *See Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp.3d 593, 609 (S.D.N.Y. 2015) (collecting cases); *see also Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff . . . is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss"). Because this is a new claim that was never raised in the second amended complaint, the Court declines to consider it for purposes of the instant motion to dismiss.

---

[6] In her first cause of action against Defendant—her only cause of action under the EPA—Edwards cited only 29 U.S.C. § 206(d), which is the provision in the EPA that mandates equal pay to employees of the opposite sex for "equal work."

Accordingly, Defendant's motion to dismiss Edwards' discrimination claim under the EPA is granted.

### B. § 1981 Discrimination Claim

A plaintiff alleging a violation of § 1981 must establish that: (1) she is a member of a racial minority group; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute, such as employment. *Johnson v. City of New York*, 669 F. Supp. 2d 444, 449 (S.D.N.Y. 2009). Here, Defendant does not challenge Edwards' pleadings with respect to the first and third elements of her § 1981 claim, as the second amended complaint alleges that Edwards belongs to a racial minority group, and that she suffered an adverse employment action, i.e., reduced wages and benefits. Rather, Defendant contends only that Edwards has failed to sufficiently allege a causal connection between the alleged adverse employment action and her race. The Court agrees.

Unlike the EPA, § 1981 requires a plaintiff, in the context of an employment discrimination claim, to establish an employer's discriminatory intent. *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Although a plaintiff is not required to plead facts proving each element of a *prima facie* case of discrimination at the pleading stage, her allegations must provide "plausible support" for a "minimal inference" that the employer was motivated by "discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Furthermore, those allegations must be "fact-specific," conclusory or naked allegations will not do. *See Grimes*, 785 F.Supp.2d at 296 (internal citations and quotation marks omitted).

Contrary to Edwards' assertion, she never alleges in the second amended complaint that her supervisor acknowledged a compensation problem *based on* race. Rather, her allegation was

8

that her supervisor acknowledged pay differences and said "give [him] a month to see what [he] can do." *See* Second Am. Compl. ¶ 28.  As discussed above, she cannot amend her complaint to add new factual allegations in response to a motion to dismiss.  Additionally, Edwards' attempt to rely on Kaspar's statement about adverse employment action taken against another employee named S.Webly, misses the mark.  Such statements, even if accepted as true, cannot provide the requisite support for Edwards' own claim absent factual allegations that she was similarly situated to that employee.  *See Littlejohn*, 795 F.3d at 312 (explaining that "adverse action taken against employees who are not similarly situated cannot establish an inference of discrimination").

Next, to the extent Edwards attempts to demonstrate an inference of discrimination by showing that Defendant treated her less favorably than a similarly situated employee outside of her protected group, Edwards has failed to allege that she is similarly situated in all material respects to Teitlebaum, with whom she seeks to compare herself.  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Brown v. Daikin America Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham*, 230 F.3d at 39).  While a plaintiff and her comparator's circumstances need not be identical, they must bear a reasonably close resemblance.  *See id*.  The Second Circuit has clarified that the judgment depends on whether the plaintiff and her comparator were subject to the same workplace standards.  *Id*.  Although whether two employees are similarly situated is ordinarily a question of fact for the jury, courts have dismissed § 1981 disparate treatment claims at the pleading stage.  *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1993) (affirming dismissal of plaintiff's § 1981 claim because plaintiff's assertions that "the panel members were white and that he is Bengali" is too conclusory and insufficient to show racial bias); *Grimes*, 785 F.Supp. 2d at 296 (dismissing § 1981 claim because conclusory

9

allegations that defendants discriminated against plaintiff by charging plaintiff higher interest rates than "similarly situated Caucasian mortgagees" are insufficient).  Here, there are no allegations that Edwards and Teitlebaum reported to the same supervisor, or that they were subject to the same workplace standards governing performance evaluation and discipline.  Furthermore, she alleged no other facts tending to show that Defendant's alleged failure to timely promote her or to pay her higher wages were motivated in any way by considerations of her race.  Accordingly, Defendant's motion to dismiss Edwards' § 1981 claim is granted.

**Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  However, the district court may exercise its discretion to deny leave if there is a good reason for it, such as "futility, bad faith, undue delay, or undue prejudice to the opposing party." *See, e.g.*, *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 171, 182 (1962)); *see also McBeth v. Porges*, 171 F. Supp. 3d 216, 235 (S.D.N.Y. 2016) ("The fact that Plaintiff already amended his complaint in an attempt to cure the deficiencies raised in Defendant's initial motion to dismiss … underscores the futility of further amendment.").  An amendment is considered futile where the plaintiff is unable to demonstrate that she would be able to cure the defects in a manner that would survive a motion to dismiss.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

Here, Defendant contends persuasively that leave should not be granted because any further amendment would be futile.  Edwards has been given multiple opportunities to

10

demonstrate the viability of her claims through not one, but two amended complaints. Notably, she had the benefit of Defendant's motion for more definite statement, a motion that notably made substantially identical arguments to those made in the instant motion, before filing the second amended complaint. Indeed, Defendant's motion arguably provided Edwards a roadmap on how she could cure the very deficiencies found here. Furthermore, this Court, at the pre-motion conference on June 12, 2019, put Edwards on notice of her complaint's weaknesses, including the need for additional details about her job responsibilities and her comparators. This guidance by the Court sufficiently addresses the concern raised by the Second Circuit Court of Appeals in *Loreley Financing (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015), that a district court highlight "the precise defects" of a plaintiff's claims. Her failure to cure her pleading deficiencies despite multiple opportunities to do so, is thus especially telling in light of the ample notice she had, including clear guidance from this Court. Accordingly, the Court finds any attempt to replead would be futile and denies Edwards leave to do so. *See, e.g.*, *Eng v. City of N.Y.*, No. Civ. 1282 (DAB), 2017 WL 1287569 (S.D.N.Y. Mar. 29, 2017) (dismissing plaintiff's EPA claim with prejudice because "[p]laintiff again fail[ed] to allege that her job is substantially similar to those of the alleged comparators," a deficiency previously identified in the Court's first order dismissing the complaint).

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED and Edwards' request for leave to amend is DENIED.  The parties are directed to appear for a teleconference on June 3, 2020 at 10:30 AM.  The parties shall call the Court using the following conference call information:  (877) 411-9748; Access Code: 3029857.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 30.

        SO ORDERED.

Dated:   May 5, 2020
          New York, New York

                                                          Edgardo Ramos, U.S.D.J.